FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 8 2021

TAMMY H. DOWNS, CLERK
By: XHays
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
Central DIVISION

CASE NO: 4:21-cv-612-JM

MARY CAROLYN BAILEY           PLAINTIFF

VS.

PULASKI COUNTY SPECIAL SCHOOL DISTRICT, and           DEFENDANTS
CHARLES MCNULTY, INDIVIDUALLY and as
SUPERINTENDENT

## COMPLAINT

Comes now the Plaintiff, by and through counsel, and for her Complaint against the Defendants, alleges and states:

This case assigned to District Judge Moody
and to Magistrate Judge Harris

### PARTIES

1. Plaintiff is and at all times herein mentioned was a resident of 1719 Sawgrass, Little Rock, Pulaski County, Arkansas 72212 within the Eastern District of Arkansas.

2. The Defendant, Pulaski County Special School District (the "District") is and at all times mention herein was a corporate school district organized and existing under the laws of the State of Arkansas with its principal place of business at 925 East Dixon Road, Pulaski County, Arkansas 72206 within the Eastern District of Arkansas.

3. The Defendant, Charles McNulty ("McNulty") is and at all times herein mentioned was an individual resident with a business address of 925 East Dixon Road, Pulaski County, Arkansas, 72206 within the Eastern District of Arkansas. At all times mentioned herein McNulty was the Superintendent, agent servant and

1

employee of the District acting within the scope of his agency and employment for the District.

## JURISDICTION AND VENUE

4. This case is brought pursuant to the provisions of the Equal Pay Act of 1963; Title VII, Civil Rights Act of 1964; the Equal Employment Opportunity Act of 1972, the Equal Employment Opportunity Act of 1995; 42 U.S.C. §1983; The Arkansas Civil Rights Act; common law defamation; and common law negligence.

5. On December 17, 2020, Plaintiff filed an EEOC charge and Supporting Statement against the District and McNulty. On April 12, 2021, the EEOC denied Plaintiff's claim but gave the Plaintiff a 90-day right to sue.

6. All act complained of herein occurred within the Eastern District of Arkansas.

7. Jurisdiction and venue are proper in this Court.

## FACTS

8. Plaintiff's educational background is a BS in Family Consumer Science from the University of Arkansas at Fayetteville in 1986, with a BS in Education from the University of Central Arkansas in 1989 and a Masters Degree in Educational Leadership from the University of Arkansas at Little Rock in 2006.

9. Plaintiff has been employed on contract by the District for 19 years. In that time, Plaintiff had a 13-year career as assistant principal and principal of Robinson High School with an exemplary record.

10. During Plaintiff's 13-year tenure as assistant principal and principal Robinson High School, some of Plaintiff's leadership accomplishments for the benefit of the students and the operations of Robinson Senior High School are as follows:

2

(a) Increased enrollment each year with 475 students in 2012 and over 800 for the fall of 2020;

(b) More AP classes offered to students;

(c) Highest number of college scholarships offered of any high school in the District for the last 3 years;

(d) Launched and implemented the DRIVEN program in the fall of 2019; AP scores continued to increase;

(e) Highest ESEA score for high schools in the District;

(f) Highest test scores overall for high schools in the District;

(g) Increased graduation rate each year, the highest of all high schools in the District;

(h) Graduation scholarship – highest average per student;

(i) Competitive sports – State Football Championship in 2019;

(j) Extremely low teacher turnover;

(k) Implemented AVID and PBIS;

(l) Fall of 2019 the high school was awarded a party for AVID kickoff by the District;

(m) Fall of 2019 asked to serve on new teacher training;

(n) Served on the PCSSD Handbook Committee for the last 3 years;

(o) Growth of parent and community involvement;

(p) Created extensive list of corporate and business partnerships for the school;

(q) Positive feedback on orderly school.

Plaintiff's pattern of leadership as assistant and principal was exemplary. During Plaintiff's tenure, Robinson became the leading high school of the five (5) high schools in the District.

11. McNulty was hired as Superintendent of the District effective July 1, 2018. His wife was hired as the Principal of the neighboring Robinson Middle School in the District effective July 1, 2019.

12. Plaintiff's continuing course of wrongful treatment by McNulty and the District started on March 5, 2020 when McNulty sent Plaintiff a letter of concern over the discipline and suspension of a student by one of Plaintiff's assistant principals in February 2020, in which Plaintiff later concurred. The suspension was handled in accordance with the District school year 2019-2020 Student Handbook. In addition, the matter was handled as a matter of administrator discretion in compliance with the District Certified Employee Committee minutes.

13. The 2019-2020 PCSSD Student Handbook, page 70, subsection D. Consequences and Infraction states "Disciplinary action will be drawn on the <u>professional judgment of teachers and administrators and on a range of discipline management techniques</u>, including restorative discipline practices. Discipline will be correlated to the seriousness of the offense, the student's age and grade level, the frequency of misbehavior, the student's attitude, the effect of the misconduct on the school environment and the statutory requirements." [Emphasis supplied]
In other words, the PCSSD Student Handbook recognizes and invests each administrator and teacher with a high degree of discretion in determining the application of any particular student discipline in a given situation.

14. The 2019-2020 PCSSD Student Handbook, page 72, subsection 4. Drugs and Alcohol makes it against the rules to possess drugs in school. This subsection specifically states "Students breaking this rule for the <u>first time</u> will be suspended and placed on probation." [Emphasis supplied]

15. Plaintiff was later severely disciplined for this incident by McNulty. The male assistant principal received no discipline of any sort, just the female Plaintiff. McNulty seemingly "moved the goal posts" to establish a set of new rules about student discipline going forward, which made it appear by innuendo that Plaintiff had in some respect violated the rules when the rules did not exist. Again, Plaintiff was disciplined and not the male assistant principal who had actually made the student disciplinary call on the day in question.

16. There was no cause for any disciplinary measures arising against Plaintiff out of this incident according to the District guidelines.

17. Then on March 6, 2020 in activity that could only be characterized as a calculated attempt to publically embarrass Plaintiff, without any warning to Plaintiff or any required suspicion or justification, McNulty and the District caused Plaintiff to be ushered out of a meeting in crowded conference room of Plaintiff's District peers by a clearly marked District Uniformed Security Officer and very publically "perp walked" by that officer to the front of the District Central Building, to a very clearly marked District Security vehicle with an open back door, whereupon Plaintiff was met by yet another clearly marked District Uniformed Security Officer and involuntarily placed in the back seat of the clearly marked District Security vehicle and driven away. The entire process was much in the method and manner, which

the police exercise in the case of an indicted criminal accused. All that was lacking was that Plaintiff was not publically hand cuffed. In transit, Plaintiff was advised that she was being transported for a drug test. At the end of this episode, Plaintiff was forced to walk back into this same conference room crowded with her coworkers and attempted as best she could to resume some degree of normalcy in avoidance of their stares questioning her character and reputation.

18. Plaintiff has absolutely no record of drug or alcohol use either in District records or otherwise. Plaintiff has not exhibited any behavior of being under the influence of drugs or alcohol. The District Certified Employee Manual states that "When the administration is <u>confronted by an employee it suspects</u> might be under the influence of alcohol or a controlled substance, it may request that the employee immediately submit to a chemical test of the employee's blood, breath or urine to determine the presence of alcohol or a controlled substance therein." There must be some cause before ordering an employee drug test. Subsequent to the drug test, Plaintiff requested the nature of the cause for the test and the results of the drug test, which she knew had to be negative. These multiple requests were denied. Plaintiff's attorney made a request for the cause information and the test results on August 21, 2020, which was not answered. On September 9, 2020, through counsel, Plaintiff served a Freedom Of Information Act request to the District for the results of the test and any other documents that would have displayed cause. On September 15, 2020 the District provided the results of the drug test, which were all negative, but no other information was provided relative to any suspicion warranting the drug test.

19. The District had no reasonable suspicion or cause to believe that on March 6, 2020, or at any time, that the Plaintiff was under the influence of alcohol or a controlled substance upon which to base the drug test. In fact, on the Alcohol Testing Form (NON-DOT) the "Reasonable Suspicion" box is <u>not</u> checked as the reason for the test. This form is checked "<u>Random</u>" as the reason for the test. The drug test as ordered by PCSSD was not in compliance with its own policy requiring reasonable suspicion. The drug test was simply harassment, defamatory, work place bullying and abusive supervision. There was no cause for any disciplinary action against Plaintiff arising out of this incident.

20. Then on March 30, 2020 Plaintiff was accused of allowing another administrator to whom Plaintiff was assigned to mentor to have improper access to her EdReflect computer account to enter notes on an evaluation of a temporary teacher. Another administrator without Plaintiff's knowledge had erroneously reported this incident to McNulty. He had not observed the entire process and drew incorrect conclusions from what he saw. Plaintiff was very open as to the process being employed at the time. Nothing was hidden from anyone. Both Plaintiff and the other person involved provided comprehensive statements to McNulty and Ms. Burgess at Human Resources that there had been no improper conduct; that Plaintiff had not provided her confidential EdReflect information; and that both parties were acting in good faith according to accepted protocol for purposes of training.

21. The District alleged that Plaintiff "deliberately" ignored the District restrictions for staff use in the administrative observation program, EdReflect. The District has

7

never exhibited any evidence that Plaintiff's state of mind cause her to "deliberately" ignore any restrictions. McNulty and the District accepted the unsupported word of a male assistant principal over that of the females involved. Again, there was no cause for any disciplinary action against Plaintiff arising out of this incident.

22. Then McNulty and Ms. Shawn Burgess, District Human Resources, gave Plaintiff a "hearing" of sorts on April 22, 2020. Without any prior notice, other than less than 24 hours before the meeting an email message, which stated that it was an administrative meeting and was disciplinary in nature. The email failed to disclose the nature of any allegations against Plaintiff. It did not allow Plaintiff sufficient time to secure a representative under District Rules. Plaintiff objected to the meeting on that basis by timely email; but it pressed on anyway. McNulty and Burgess, with obvious joint pre-planning as can easily be supported by the nature of the language both McNulty and Burgess employed in the meeting, "ambushed" Plaintiff with the news that Plaintiff would receive a ten (10) day suspension without pay from her position as principal of the Robinson Senior High School and be the subject of an ethics complaint before the State Department of Education Professional Licensure Board. It was either that alternative or <u>Plaintiff was told she could retire or quit</u>. Plaintiff had no prior disclosure of the true nature of this meeting and had no representation. Plaintiff was placed in a "Hobson's Choice" situation in which she appeared to have a choice; but in reality had none.

23. In a complete unedited recording of this meeting, McNulty repeatedly alleged a "pattern of lack of leadership" exhibited by Plaintiff as principal of Robinson High School. The sole basis for that allegation consisted of the two minor incidents of

very doubtful validity from earlier the year detailed above, and in which any improper conduct was denied by other participants and which were erroneously reported to McNulty by his obviously placed "watch dogs" in Plaintiff's office.

24. Based upon the list of Plaintiff's accomplishments above, she did not display a "pattern of lack of leadership." To the contrary, Plaintiff has historically demonstrated a "true pattern of leadership."

25. In addition to the failure of due process and a total mischaracterization of Plaintiff's job performance in the April 22 and April 28 meetings, there were other very significant incidents of wrongful conduct by McNulty and the District.

26. In the recording of the April 22 meeting McNulty and Ms. Burgess undertook to advise Plaintiff of her available disciplinary options. They repeatedly told Plaintiff that she had basically two rights. She could accept the 10-day suspension without pay or she could retire or resign and avoid the filing of an ethics complaint against her at the Arkansas Department of Education Professional Licensure Standards Board ("PLSB"). Such a filing would have presented the end of Plaintiff's professional career in education. They allowed Plaintiff until the next day, April 23, 2020 to reply with her decision. She objected. The date was then extended by five (5) days to April 28, 2020. Again, Plaintiff was placed in a "Hobson's Choice" situation in which she appeared to have a choice; but in reality had none.

27. In McNulty's statement of rights to Plaintiff on April 22 and April 28, he knowingly, willfully and deceitfully failed to advise Plaintiff of any right of due process and protections to which she was entitled to under the Arkansas Teacher Fair dismissal Act ("ATFDA") McNulty failed to tell Plaintiff that if she was not non-

renewed or terminated before May 1, 2020 that her contract automatically rolled into the 2020-2021 school year and that her job duties as principal and salary in that position would automatically continue into next 2020-2021 school year. At the April 28 meeting, there were no other options granted and no rights of due process granted under the ATFDA. Plaintiff was merely told that she was suspended without pay from April 29 to May 13, 2020. Plaintiff refused to quit. Plaintiff was placed in a "Hobson's Choice" situation in which she appeared to have a choice; but in reality had none.

28. On April 28, 2020, McNulty told Plaintiff that he would later contact her regarding her continued roll at Robinson. That contact never happened. Instead with no prior notice to Plaintiff, on May 4, 2020 McNulty sent a message to the Robinson Staff and all of the other principals in the District stating that Plaintiff "will transition from the principal at Robinson High School to another administrative position within the district." His message went on to state "I look forward to working with the leadership that supports our 2020-2021 initiatives, like AVID and PBIS to further the mission of equity and excellence in PCSSD, says McNulty." If not directly, certainly by innuendo, the message clearly is defamatory to Plaintiff's professional career and reputation in that he considered Plaintiff to not be a part of the PCSSD leadership that supported his 2021 initiatives. It is presented as though Plaintiff did not share in the vision of the initiatives of AVID and PBIS, even though she had in fact already explicitly done so in her tenure as principal without him (See accomplishments listed above). McNulty's statements left one to only conclude that

Plaintiff was not fit to be incorporated into the mission of equity and excellence in PCSSD, when the truth was exactly the opposite.

29. Plaintiff filed a grievance against the District, McNulty and this conduct. McNulty did not attend Plaintiff's subsequent grievance hearing. Instead, he conveniently scheduled that hearing to be held by Ms. Yolaunda Williams, the individual that Plaintiff replaced as principal at Robinson Senior High School some four (4) years earlier. Now stop and think a minute. What was the optics of that situation? Do you think for a minute that there could at least be the appearance of a conflict of interest and that Ms. Williams just might have some problems with a bias? No matter. As might have been expected, Ms. Williams summarily denied Plaintiff's grievance. She denied Plaintiff's request to void the claimed ethics violation and Plaintiff's request to eliminate the denial of compensation during the suspension. Again, Plaintiff was placed in a "Hobson's Choice" situation in which she appeared to have a choice; but in reality had none.

30. In replacing Plaintiff as Robinson Principal, McNulty and the District hired a male and paid him a higher salary than the Plaintiff for the same work. Plaintiff's male replacement was paid $119,000.00 annually while Plaintiff was paid $103,800.00.

31. After the April 28, 2020 meeting, the actions of Mr. McNulty and the District became retaliatory because Plaintiff refused to quit. The abuse did not come to an end for her. For over a thirty (30) day period in May and June 2020, Plaintiff received absolutely no guidance whatsoever from McNulty or any other District administrator concerning her future with the District. Contrary to the prior

11

representations of McNulty, Plainitff received no job assignment or reporting station. Plaintiff had no designated supervisor or reporting official. Plaintiff was not placed into the organizational structure of the District as an administrator or in any other capacity.

32. Therefore, on June 15, 2020, Plaintiff sent an email to the HR Director, Ms. Burgess, requesting an assignment. By reply on June 24, 2020, McNulty and Ms. Burgess vaguely replied that Plaintiff's title was now Director of Special Projects. However, Plaintiff was given no job description, no job location, no supervisor and was told that there was no office place for her. Again, there was no further contact with Plaintiff regarding her job with the District until August. Plaintiff is a certified, licensed education administrator. The Director of Special Projects is a position for a certified, licensed administrator. However, since August 2020, the Director of Special Projects was taking temperatures of visitors in the building lobby at the Pulaski East Building, a location that is absolutely at the furthest distance point in the District from Plaintiff's home. In this position, Plaintiff was constantly exposed to other District administrative personnel, who were constantly amazed at her current location and job to her humiliation and defeat. Plaintiff's duties as Director of Special Projects were upgraded to that of a file clerk with the job of organizing and alphabetizing of records and data entry. She also was assigned to county popsicle sticks. Plaintiff was told that she would be given a small space in which to work instead of being forced to work in the lobby. During this time, Plaintiff continued to request an administrator job and responsibilities, but received none.

12

33. On September 9, 2020, Plaintiff filed an FOIA request through counsel to the District requesting specific information on the failure to appointment her to administrative duties. No responsive documents were received. However, immediately after this FOIA, Plaintiff was initially assigned some actual administrative duties. However, it did not last and she was back taking temperatures. It would appear to have merely been an effort at damage control by the District. On September 24, 2020, Ms. Burgess assigned Plaintiff a new title of Learning Services Liaison; but she was given job duties that were mostly non-administrative. On September 26, 2020, Plaintiff was told by Assistant Superintendent Alicia Smith that she would be the call enter for parents with questions of student attending school virtually. Nothing developed from that assignment.

34. The very best evidence that the District does not really consider Plaintiff to be an administrator is the fact that to this very date she has never been listed on the District web site as an administrator or has been placed into the District phone directory.

35. Plaintiff's removal as Robinson Principal and the assignment of low-level clerical duties inconsistent with Plaintiff's administrator status is retaliatory because she refused to resign, quit, or retire from her District employment. These actions by McNulty and the District are an attempt to make things so difficult for Plaintiff that she will give up. This continuous and related course of conduct by McNulty and the District is willful, intentional, malicious, defamatory and damaging to Plaintiff's professional career. This continuing and related course of conduct is

nothing but combined efforts of harassment, workplace bullying and abusive supervision. It is a continuing act creating a hostile work place for Plaintiff. Plaintiff has never failed to perform the menial duties assigned to her although they have changed the terms and conditions of her employment with the District. Such activity occurs to the present date.

36. The wrongful actions of McNulty and the District have cause Plaintiff to suffer physical, mental and emotional distress and harm for which the Plaintiff is now under medical care.

## CAUSES OF ACTION

### Equal Pay Act of 1963; The Equal Employment Opportunity Act of 1972, and the Equal Employment Opportunity Act of 1995

37. Plaintiff hereby restates the material factual allegations of the prior paragraphs of the Complaint.

38. McNulty and the District have paid opposite male employees more than the female Plaintiff for equal work in a job as high school principal, which requires substantially equal skill, effort and responsibility and is performed under similar working conditions.

39. Defendants violation of the Equal Pay Act of 1953, the Equal Employment Opportunity Acts of 1972 and 1995 is a proximate cause of damages to the Plaintiff.

### Title VII, Civil Rights Act of 1964

40. Plaintiff hereby restates the material factual allegations of the prior paragraphs of the Complaint.

41. Plaintiff is a member of a protected group. Plaintiff is qualified for the position of high school principal. McNulty and the District terminated Plaintiff from her position as high school principal. McNulty and the District hired a male employee to replace the Plaintiff. The District has discriminated against the Plaintiff based upon her sex.

42. Defendants violation of Title VII, Civil Rights Act of 1964 is a proximate cause of damages to the Plaintiff.

<u>42 U.S.C. §1983 and The Arkansas Civil Rights Act</u>

43. Plaintiff hereby restates the material factual allegations of the prior paragraphs of the Complaint.

44. As Superintendent of the District, McNulty is a state actor under 42 U.S.C. §1983.

45. McNulty subjected Plaintiff to conduct as alleged herein that occurred under color of state law as alleged herein and this conduct deprived Plaintiff of rights and privileges for equal protection under the law and in her property rights of her employment and employment contract guaranteed to Plaintiff under Amendment XIV, Section 1 to the United States Constitution.

46. McNulty and the District violation of 42 U.S.C. §1983 is a proximate cause of Plaintiff's damages.

<u>Defamation</u>

47. Plaintiff hereby restates the material factual allegations of the prior paragraphs of the Complaint.

48. On or about May 4, 2020 (a) McNulty and the District published a false statement of

fact concerning Plaintiff; (b) the statement of fact was defamatory; (c) Defendants acted with negligence in failing to determine the truth of the statement prior to its publication or with knowledge that the statement was false; and (d) the publication of the statement was a proximate cause of Plaintiff's damages.

Negligence

49. Plaintiff hereby restates the material allegations of the prior paragraphs of the Complaint.

50 McNulty acting within the course and scope of his employment and agency for the District was negligent and careless, including but not limited to, the following particulars to wit: (a) he failed to maintain competence regarding his professional practice, inclusive of professional and ethical behavior, skills, knowledge, dispositions, and responsibilities relating to his or her organizational position; (b) he failed to maintain knowledge and competence regarding the District Certified Personnel Policies; (c) he failed to maintain knowledge and competence regarding the Arkansas State laws applicable to Plaintiff under the ATFDA; (d) he failed to maintain knowledge and competence regarding the application of the District Certified Personnel Policies and Arkansas State laws to the Plaintiff; (e) the negligence of the agent and servant of the District is imputed to the District; and (e) the Defendants' negligence is a proximate cause of Plaintiff's damages.

WHEREFORE, Plaintiff prays that the Defendants be restrained and enjoined from violation of the above recited Federal and State Acts; that Plaintiff be awarded judgment against the Defendants and each of them for pay and benefits found due to her; that Plaintiff be awarded judgment against the Defendants and each of them for

damages caused to the Plaintiff by the Defendants' violation of the above recited Federal and State Acts; that Plaintiff be awarded judgment against the Defendants and each of them for damages proximately caused to her for defamation and negligence; in all sums as determined by the trier of fact in excess of the Federal Jurisdictional limits; and for all other proper and appropriate relief.

Respectfully submitted,

_____
RANDY COLEMAN, BAR NO. 70018
RANDY COLEMAN, P. A.
P. O. Box 25831
Little Rock, Arkansas 72221
COUNSEL
JACK NELSON JONES, P. A.
Email: grc@jacknelsonjones.com
Direct Dial: 501.707.5544
Cell: 501.590.7197
Fax: 501.375.1027

ATTORNEY FOR PLAINTIFF