IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MARY CAROLYN BAILEY**                                                                                   **PLAINTIFF**

v.                                              Case No. 4:21-cv-00612-JM

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT and
CHARLES MCNULTY, Individually and as Superintendent**              **DEFENDANTS**

### MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This Memorandum Brief is submitted in support of the Motion for Summary Judgment ("Motion") filed by Defendants, Pulaski County Special School District ("District") and Charles McNulty, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed herein, Defendants are entitled to summary judgment as a matter of law.

#### I.    INTRODUCTION AND FACTUAL BACKGROUND

This is an employment discrimination case. Plaintiff, a white female, is an administrator at PCSSD, serving as assistant principal and principal at Robinson High School ("Robinson") for 13 years, until her reassignment to a district-level administrator position starting with the 2020-2021 school year due to Plaintiff's performance deficiencies, which is the basis for this action. *See* Complaint. Plaintiff alleges her replacement as Robinson principal, a male, is paid more than her in violation of the Equal Pay Act of 1963[1], that she was discriminated against on the account of her sex (female) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") the Arkansas

---

[1] In Plaintiff's cause of action under the Equal Pay Act, she also references the Equal Employment Opportunities Act of 1972 and 1995, 42 U.S.C. § 2000e-16, but that statute is only applicable to federal employees, which Plaintiff is not, as that statute was an extension of Title VII of the Civil Rights Act to federal employees. *See Brown v. GSA*, 425 U.S. 820, 96 S. Ct. 1961 (1976). Plaintiff is covered under Title VII so PCSSD will analyze that cause of action in this Motion.

Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-101 and in violation of 42 U.S.C. § 1983. *See* Compl. Plaintiff also brings claims of defamation and common law negligence.

PCSSD is a school district providing educational services to students in grades K-12. PCSSD is a party to the long-running school desegregation case that recently culminated in a two-week trial in the summer of 2020 before the Honorable Price Marshall on PCSSD's unitary status. 4:82-cv-00866-DPM. Plaintiff has been an employee of PCSSD for approximately 21 years, much of that time as an assistant principal and principal at Robinson. *See* Complaint. Dr. Charles McNulty, a white male, is the superintendent and was the final decision-maker for all employment decisions related to Plaintiff at issue in this case.

On March 5, 2020, Plaintiff received a written reprimand from Dr. McNulty related to performance issues at Robinson. *See* March 5, 2020 Letter, attached to the Motion as Exhibit 1. The reprimand related to inappropriate discipline of a Robinson student who was in possession of drugs and tools that could be used to distribute drugs. *Id*. Dr. McNulty was concerned that this was not an appropriate level of discipline for this extremely serious infraction and that Plaintiff allowed the discipline as the building principal. There were also concerns in the reprimand that Plaintiff allowed the lesser discipline because the student was a high-ranked and prominent student athlete. Plaintiff alleges that she had discretion as the building principal on matters of discipline and that it was actually the assistant principal, not her, who administered the discipline, and the male assistant principal received no reprimand for his involvement. Complaint at ¶¶ 12-15. The record reveals the male assistant principal was disciplined and received the very same disciplinary reprimand and improvement plan that Plaintiff received. *See* March 5, 2020 Letter to Assistant Principal, name redacted, attached to the Motion as Exhibit 2.

The performance issues by Plaintiff continued, and on April 28, 2020, she received another written reprimand and a ten-day suspension without pay related to her ongoing performance issues

as Robinson principal. *See* April 28, 2020 Letter, attached to the Motion as Exhibit 3. This reprimand noted Dr. McNulty's ongoing concern over the inappropriate discipline of the student-athlete involving drugs and an additional issue over Plaintiff's deficient teacher observations. *Id*. As outlined in the reprimand, Plaintiff allowed an "acting" assistant principal to perform a teacher classroom observation and then enter the observation notes into the District's teacher observation monitoring system – EdReflect – despite this administrator not having the appropriate credentials or state-required qualifications to perform this sensitive task. *Id*. Even more concerning was that this was all known to Plaintiff and communicated to her earlier in the year by PCSSD's human resource director. *Id*. Plaintiff characterizes her involvement as "acting in good faith according to accepted protocol for purposes of training." *See* Complaint at ¶ 20. Plaintiff later admitted in her grievance with the District and in her deposition that she was under the "mistaken belief" that the acting assistant principal could perform observations. *See* Deposition of Plaintiff at pp. 30-40 and Grievance Document dated May 14, 2020, attached to the Motion as Exhibits 4 and 5, respectively.

Following the reprimand and suspension that was initiated on April 28, 2022, Plaintiff initiated a grievance of her suspension under PCSSD's grievance policy. *See* Ex. 5, Grievance Letter. However, Plaintiff voluntarily abandoned her grievance before it reached the level of the PCSSD school board. *See* Ex. 4 at pp. 24-25, Plaintiff's Deposition.

Plaintiff currently serves PCSSD as the Learning Services Liaison, a District-level administrative position that is housed in the District's central office. *See* Ex. 4 at p. 6, Plaintiff's Deposition. Plaintiff reports to both the Deputy Superintendent and the Director of Learning Services. *Id.* Plaintiff testified in her deposition that she no longer wanted to be returned to the Principal at Robinson, but wanted "to continue to be an employee in Pulaski County Special School District in an administrative role." *Id*. at p. 8. The District pays its employees, including

3

Plaintiff, according to a salary schedule. *See* PCSSD Salary Schedule, attached to the Motion as Exhibit 6. In Plaintiff's current administrative role, she is paid according to the PCSSD salary schedule and performs job duties as outlined in the Plaintiff's job description, which lists her as a "Certified Administrative Job Classification" with the same contract days she had as a principal—244. *See* Plaintiff's Job Classification, attached to the Motion as Exhibit 7.

Plaintiff's pay never decreased following her reassignment from Robinson Principal to District Administrator, but actually increased. *See* 2019-2020 and 2020-2021 Contracts, attached to the Motion as Exhibits 8 and 9, respectively. Pursuant to Plaintiff's 2020-2021 contract, she began her new administrative role the start of the 2020-2021 contract year—July 1, 2020. Indeed, Plaintiff signed her 2020-2021 contract on May 18, 2020. *See* 2020-2021 Contract, Ex. 9.

Plaintiff her EEOC Charge on December 10, 2020 and was issued a Dismissal and Notice of Rights Letter on April 12, 2021 and filed this Complaint on July 8, 2021. *See* Plaintiff's EEOC Charge and EEOC Dismissal and Notice of Rights letter, Exhibits 10 and 11, respectively.

Plaintiff provides no direct evidence of sex discrimination. PCSSD adamantly denies that Plaintiff was discriminated against in violation of applicable law.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if the moving party has established its right to a judgment with such clarity as to leave no room for controversy, and the non-moving party is not entitled to recover under any discernable circumstances. *See LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753 (D.C. Ark. 1984).

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

4

When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."). The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co*., 49 F.3d 399, 401 (8th Cir. 1995).

### III. ARGUMENT AND AUTHORITY

**A. The District Did Not Violate the Equal Pay Act.**

Plaintiff complaint that her replacement as Robinson High School Principal, Dr. Jay Pickering, a male, was (and still is) paid more than her, and that this is a violation of the Equal Pay Act. Indeed, Dr. Pickering is paid more than Plaintiff, as he has his doctorate degree and is paid for having the terminal degree in his field, all according to the District's salary schedule. Plaintiff does not have her terminal degree. This pay disparity is based on long-standing District policy that is incorporated into all employees' contracts that provides for additional pay for higher-level degrees—a bona fide merit pay system allowed under the law. *See Hutchins v. Int'l Bhd. of Teamsters*, 177 F.3d 1076, 1081 (8th Cir. 1999).

The Equal Pay Act, 29 U.S.C. § 206(d), with certain exceptions, prohibits employers from discriminating against employees on the basis of sex with respect to wages paid for equal work performed under similar working conditions. The Equal Pay Act, which is part of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, provides:

5

> No employer having employees subject to [the minimum wage provisions of the Fair Labor Standards Act] shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).

To establish a violation under the Act, a plaintiff must prove that the defendant paid different wages to employees of different sexes for "equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 669 (8th Cir. 1992) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)); *see Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002) (holding the plaintiff must prove that (1) he or she was paid less than one or more members of the opposite sex employed in the same establishment, (2) for equal work on jobs requiring equal skill, effort, and responsibility, (3) that were performed under similar working conditions). "Whether two jobs entail equal skill, effort, or responsibility requires practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education and ability." *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 719 (8th Cir. 2000).

A difference in the job performance between a male and female employee in the same position can be a "factor other than sex" sufficient to justify a disparity in pay. *See EEOC v. Cherry-Burrell Corp.*, 35 F.3d 356, 362 (8th Cir. 1994) ("[P]erforming 'similar' duties does not bring about an inference that all Buyers did 'identical' work or even that objectively measured,

they performed the Buyer's role equally."). Education or experience may be factors sufficient to justify a disparity in pay. *See Hutchins,* supra*; Clymore v. Far-Mar-Co., Inc*., 709 F.2d 499, 503 (8th Cir. 1983). An employer's salary retention policy, maintaining a skilled employee's salary upon temporary change of position, may be a factor "other than sex" that justifies a salary differential. *Taylor v. White,* 321 F.3d 710, 720 (8th Cir. 2003). Reliance on prior salary may be a factor "other than sex" under appropriate circumstances. *Id. Cf. Drum v. Lesson Elec. Corp*., 565 F.3d 1071 (8th Cir. 2009) (prior salary must not be based on prohibited "market force theory").

Once the plaintiff has met his or her burden, the employer may avoid liability only by proving that the disparity in pay was based on a bona fide seniority system, a merit system, a system that measures earnings by quantity or quality of production, any other factor other than sex. *See Hutchins v. Int'l Bhd. of Teamsters*, 177 F.3d 1076, 1081 (8th Cir. 1999).

The District pays its employees according to a salary schedule. *See* PCSSD Salary Schedule, attached to the Motion as Exhibit 6. Pursuant to the salary schedule, Plaintiff is paid $323.22 a day because she has her master's (MA) +15 (years) and Dr. Pickering is paid $373.40 a day because he has his doctorate. Plaintiff conceded in her deposition that the PCSSD salary schedule compensates employees who have a doctorate, which she admitted she does not have. *See* Ex. 4 at pp. 40-47, Plaintiff's Deposition. The disparity in pay between Plaintiff and Dr. Pickering is not based on sex, but a bona fide merit system in the salary schedule that awards an employee with a doctorate degree more pay, and which compensation scheme is in full compliance with the Equal Pay Act.

### B. PCSSD Did Not Discriminate Against Plaintiff in Violation of Title VII or ACRA.

#### 1. Title VII and ACRA Standard

In 1964, Congress enacted Title VII of the Civil Rights Act in an effort to eliminate disparate treatment of men and women in the workplace. *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 907 (8th Cir. 2006). Title VII works to prohibit unlawful discrimination and retaliation practices by employers in the workplace. 42 U.S.C. § 2000e2(a). Title VII discrimination claims are analyzed under the familiar burden-shifting framework set out in the *McDonnell Douglas* line of cases. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08, 113 S. Ct. 2742, 2746-48, 125 L. Ed. 2d 407 (1993); *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 713-715, 103 S. Ct. 1478, 1480-82, 75 L. Ed. 2d 403 (1983); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-256, 101 S. Ct. 1089, 1093-95, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).

A case alleging a Title VII violation moves through three phases. *McCosh v. City of Grand Forks*, 628 F.2d 1058, 1062 (8th Cir. 1980). "First, the Plaintiff bears the burden of proving by a preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Cmty. Affairs*, 450 U.S. at 252-53. A plaintiff may carry this burden in one of two ways: (1) by offering direct evidence of the alleged discriminatory motive or action; or (2) by producing sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion. *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir. 1982) (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)). If a plaintiff is unable to present direct evidence of an employer's alleged discriminatory behavior, she can raise an inference of such

conduct using the framework articulated in *McDonnell Douglas*. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253.

We apply the burden-shifting *McDonnell Douglas* framework to Plaintiff's Title VII discrimination claims. *Piantanida v. Wyman Center, Inc.*, 116 F.3d 340, 341-342 (8th Cir. 1997). In order to establish a prima facie case of discrimination, Plaintiff must show that (1) she is a member of a protected group; (2) she was meeting his employer's legitimate expectation; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 765 (8th Cir. 2014) and *Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006). Should the plaintiff succeed in making a prima facie case, "it then falls to the employer to promulgate a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's prima facie case." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001).

If the defendant successfully rebuts the presumption of discrimination, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were instead a pretext for discrimination. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 256. To do so, the plaintiff must either: (1) persuade the court that a discriminatory reason more likely motivated the employer, or (2) show that the employer's proffered explanation is unworthy of credence. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804-805). The plaintiff must provide evidence that does more than raise doubts about the wisdom and fairness of the employer's actions; instead, she must create a real question as to the genuineness of the employer's perceptions and beliefs. *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019) (quoting *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018)). A plaintiff can only succeed at this stage if he presents sufficient

evidence to demonstrate *both* that the employer's articulated reason for the adverse employment action was false, *and* that discrimination was the real reason. *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (quoting *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir. 1998)). Finally, "the ultimate burden of persuading the trier of fact that a defendant intentionally discriminated against a plaintiff remains at all times with the plaintiff." *Id.* (citing *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978)).

The Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-107, is analyzed under the same legal framework as claims brought under Title VII of the Civil Rights Act of 1964. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 787 (8th Cir. 2011).

### 2. Plaintiff Failed to Timely File Her EEOC Charge and Failed to Exhaust Title VII's Administrative Remedies.

Plaintiff filed a charge of discrimination with the EEOC ("Charge") on December 10, 2020 and received a Dismissal and Notice of Rights ("Notice") letter on April 12, 2021. *See* Exhibits 10 and 11 attached to Defendants' Motion. "In order to pursue a Title VII action, plaintiffs generally must file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred." *Bissada v. Arkansas Children's Hosp.*, 639 F.3d 825, 830 (8th Cir. 2011), citing 42 U.S.C. § 2000e-5(e)(1) (requiring that Title VII claims be filed with EEOC within 180 days after alleged unlawful employment practice). In order to sue, a Title VII plaintiff must first "exhaust[]" her administrative remedies by filing a charge with the EEOC that "give[s] notice of all claims of discrimination" that she intends to assert. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630-31 (8th Cir. 2000). "In order to preserve a claim for discrimination based on a particular characteristic—for example, race—a plaintiff must typically check the box for that characteristic on the EEOC charge, at least when the charge's factual allegations would not reasonably put the EEOC on notice of potential discrimination based on the characteristic. *Jackson*

10

*v. Minn. Dep't of Human Servs.*, No. 20-cv-749 (ECT/TNL), 2021 U.S. Dist. LEXIS 53880, at *16 (D. Minn. Mar. 23, 2021), citing to *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011) (affirming the dismissal of age discrimination and retaliation claims as unexhausted where the plaintiff had only checked the boxes for race and sex discrimination in her EEOC charge).

The exhaustion of administrative remedies in an EEOC charge extends to claims under the Arkansas Civil Rights Act ("ACRA"). *See Smith v. United States Truck*, Civil No. 97-2171, Civil No. 97-2172, 1998 U.S. Dist. LEXIS 3455, at *9 (W.D. Ark. Feb. 18, 1998).

Plaintiff's claims under Title VII and ACRA only relate to her sex. *See* Complaint at ¶ 41 ("The District has discriminated against the Plaintiff based upon her sex."). Plaintiff does not allege retaliation or hostile work environment as the basis for her discrimination under her Title VII or ACRA claims. In Plaintiff's EEOC Charge, she only checked the box for discrimination based on retaliation and "other," which Plaintiff then described in her Charge as a "hostile work environment." *See* Ex. 10. Notably, Plaintiff did not check the box for "Sex" in her Charge and nowhere in her Charge under the narrative does she reference that her alleged discrimination is on the basis of her sex. Through her lengthy recitation of facts in her Charge, she only makes repeated references to retaliation and a hostile work environment, but never complains the treatment was because she was female.

Plaintiff's failure to mark the box for "sex" in her EEOC Charge is fatal to her claim and her Title VII and ACRA claims must be dismissed for failure to exhaust Title VII's administrative remedies.

Lastly, Plaintiff only brought her deficient EEOC Charge on December 10, 2020, but her reassignment from Robinson principal to another administrative position was known to her no later than May 18, 2020, when she signed her 2020-2021 contract that clearly outlined her new position and all terms. *See* 2020-21 Contract, Ex. 9. Plaintiff was required to file her EEOC Charge no

11

later than 180 days after the date of this alleged discriminatory treatment, which would have been by November 14, 2020. Plaintiff's EEOC was not timely filed and therefore the administrative remedies of Title VII and ACRA were not exhausted, and requires dismissal of her Title VII and ACRA claims.

### 3. Plaintiff Cannot Make a Prima Facie Claim Under Title VII Because There Was No Adverse Employment Action; Plaintiff Remains Employed as a District Administrator at Her Same Pay.

Plaintiff has suffered no adverse employment action and therefore has no claim under Title VII or ACRA. A plaintiff can demonstrate that she suffered an adverse employment action by establishing that she sustained a tangible change in her working conditions that led to a material employment disadvantage. *Twymon*, 403 F. Supp. 2d at 948. As a general matter, "termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." *Twymon*, 403 F. Supp. 2d at 948 (quoting *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 706 (8th Cir. 2005). A purely lateral transfer, one that involves only minor changes in working conditions and no reduction in pay or benefits, does not amount to a demotion and cannot qualify as materially adverse employment action. *See Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir.1997).

Plaintiff was transferred to the PCSSD central office and her pay has not changed, except upward with annual increases for all employees through a District-wide salary schedule increase, a fact she admits. *See* Ex. 4 at p. 72, Plaintiff's Deposition. Plaintiff remains an administrator with PCSSD with her work location in the central office and she reports to the Deputy Superintendent. Plaintiff's job description lists her as a "Certified Administrative Job Classification" with the same contract days she had as a principal—244. *See* Plaintiff's Job Classification, attached to the Motion as Exhibit 7. While Plaintiff may be upset she is no longer

the Robinson Principal (although in her deposition she testified she no longer wanted that job), the law does not require the employer to cater to the employee's "individual preferences." *See Smith v. Pulaski Cty. Special Sch. Dist.*, No. 4:16CV00574 SWW, 2017 U.S. Dist. LEXIS 27718, at *6 (E.D. Ark. Feb. 28, 2017). Here, Plaintiff remains an administrator at her same pay and status and has therefore suffered no adverse employment action.

### 3. Plaintiff Cannot Make a Prima Facie Claim Under Title VII Because She Was Not Meeting Her Employer's Expectations.

A required element of a prima facie case in an unlawful termination matter is that the plaintiff was meeting her employer's reasonable expectations. Plaintiff was not. PCSSD documented two separate performance issues with Plaintiff that culminated in her reassignment to another equal-paying administrative position. In both of Plaintiff's documented reprimands, her performance deficiencies were outlined through a performance improvement plan. A plaintiff's placement on an improvement plan is strong evidence that he was not meeting his employer's reasonable expectations. *See Young v. St. John's Mercy Health Sys.*, No. 4:10CV824 TIA, 2011 U.S. Dist. LEXIS 129609, at *17-18 (E.D. Mo. Nov. 9, 2011) and *Drummond v. MCSA, LLC*, No. 08-1007, 2009 U.S. Dist. LEXIS 26717, at *12 (W.D. Ark. Mar. 25, 2009). Even giving all inferences to Plaintiff, it was clear that she was not performing at the level expected of her as a building administrator, and as a matter of law she cannot make out a prima facie case of discrimination.

The Court is not in a position to second-guess the reassignment decision made by PCSSD based on Plaintiff's poor performance. "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004)

13

(quoting *Hutson v. McDonnell Douglas Corp*., 63 F.3d 771, 781 (8th Cir. 1995)). Plaintiff's reassignment was due to her documented poor performance. The District has an interest in ensuring its high school principals are performing at the highest level. This legitimate, non-discriminatory reason for Plaintiff's reassignment requires that Plaintiff's Title VII and ACRA claims be dismissed.

### 4. Plaintiff Cannot Make a Prima Facie Claim Under Title VII Because She Cannot Present Circumstances Giving Rise to an Inference of Discrimination.

The fourth element of a prima facie case in an unlawful termination matter requires that Plaintiff prove that similarly situated employees outside the protected class were treated differently. *See Martinez v. W.W. Grainger, Inc.*, 664 F.3d 225, 230 (8th Cir. 2011). Plaintiff has the burden of demonstrating that there were individuals similarly situated in all relevant aspects to her by a preponderance of the evidence. *See Harvey v. Anheuser-Busch, Inc*., 38 F.3d 968, 972 (8th Cir. 1994). Specifically, the individuals used for comparison must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *See Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487-88 (8th Cir. 1998).

Plaintiff claims that other high school principals were not treated the same as her—not disciplined and reassigned for similar issues. Plaintiff has presented no evidence of any similarly situated employee. Indeed, Plaintiff's replacement at Robinson, Dr. Pickering, was obviously not similarly situated to her since he took the Robinson position after Plaintiff and did not have the same performance issues. For this, Plaintiff cannot prove his treatment was different than that of similarly situated employees that gives rise to an inference of discrimination.

### C. Plaintiff's Claims Under 42 U.S.C. § 1983 Fail for the Same Reasons Considered Above.

The United States Court of Appeals for the Eighth Circuit has held that a § 1983 claim based on alleged violations of equal protection in the employment context is analyzed in the same way as a Title VII claim of discrimination. *Hicks v. St. Mary's Honor Ctr.*, 970 F.2d 487 (490-91) (8th Cir. 1992), *rev'd on other grounds*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Richmond v. Board of Regents of Univ. of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992) (burden of showing prima facie case of discrimination is the same under Title VII, § 1981, § 1983, or the IDEA); *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986) (inquiry into intentional discrimination for individual actions brought under §§ 1981 and 1983 is essentially the same inquiry under Title VII); *Craik v. Minnesota State Univ. Bd.*, 732 F.2d 465, 468 n. 5 (8th Cir. 1984) (issue of discriminatory intent is common to analyses under Fourteenth Amendment, § 1983, and Title VII).

Accordingly, Plaintiff's § 1983 claims of discrimination fail for the same reasons considered above.

### D. Plaintiff Cannot Prove PCSSD or McNulty Defamed Her.

Plaintiff alleges McNulty and PCSSD defamed her when it published a false statement about her on May 4, 2020. Plaintiff is referring to the email announcement from the PCSSD communications department regarding the principal change at Robinson, attached to the Motion as <u>Exhibit 12</u>.

The initial determination of whether words spoken or published are capable of constituting defamation rests in the Court. *Waymire v. DeHaven*, 313 Ark. 687, 689, 858 S.W.2d 69, 70 (1993). Here, the written words of the District do not constitute defamation as a matter of law and summary judgement must be granted in its favor.

15

A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001); *Southall v. Little Rock Newspapers, Inc.*, 332 Ark. 123, 964 S.W.2d 187 (1998); *Thomson Newspaper Publishing Inc. v. Coody*, 320 Ark. 455, 896 S.W.2d 897 (1995). The following elements must be proved to support a claim of defamation, whether it be by the spoken word (slander) or the written word (libel): (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Dodson v. Allstate Ins. Co., supra; Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997); *Minor v. Failla*, 329 Ark. 274, 946 S.W.2d 954 (1997) (citing *Mitchell v. Globe Int'l Pub., Inc.*, 773 F. Supp. 1235 (W.D. Ark. 1991)).

The allegedly defamatory statement must also imply an assertion of an objective verifiable fact. *Dodson v. Allstate Ins. Co., supra; Dodson v. Dicker*, 306 Ark. 108, 812 S.W.2d 97 (1991) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990)). In order to determine whether a statement may be viewed as implying an assertion of fact, the following factors must be weighed: (1) whether the author used figurative or hyperbolic language that would negate the impression that he or she was seriously asserting or implying a fact; (2) whether the general tenor of the publication negates this impression; and (3) whether the published assertion is susceptible of being proved true or false. *Dodson v. Allstate Ins. Co., supra; Dodson v. Dicker, supra.*

The email announcement's only mention of Plaintiff is to notify Robinson staff that she would transition to another administrative position in the District, and to note she had served as principal for several years—all true statements. Nothing in the communication could be construed as defaming Plaintiff, but the statement was an accurate summary of the administrative change at

Robinson and was necessary to keep staff informed. All statements were true, and the focus was to alert staff of administrative changes—not to address any personnel issues with Plaintiff. PCSSD's references to its ongoing commitment to "equity and excellence" in the first sentence must be considered in the context of PCSSD's decades-long involvement in the desegregation case, which was culminating in a two-week trial in the summer of 2020—just weeks after the email announcement was made. *See Boellner v. Clinical Study Ctrs., LLC*, 2011 Ark. 83, at 23, 378 S.W.3d 745, 760 (statement must be false and must be "considered as a whole," taking into account the plain meaning of the statement and the circumstances surrounding the statement). The announcement considered as a whole—in the context of notifying Robinson staff of administrative changes and its reference to its commitment to the desegregation case efforts—cuts against Plaintiff's claim.

Furthermore, Plaintiff must actually prove reputational damages in a defamation action—damages are not presumed. *See United Ins. Co. of America v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998). Plaintiff has presented no such evidence of damages. She remains an administrator at PCSSD at her same pay and status.

Lastly, as Plaintiff was a public official, she must prove actual malice on the part of PCSSD. *See Drew v. KATV Television, Inc*., 293 Ark. 555, 557, 739 S.W.2d 680, 681 (1987). Plaintiff was the principal of the largest high school in PCSSD, the sixth largest high school in the state, certainly a position of "considerable public responsibility." *Id.* Plaintiff has a public official is consistent with the Arkansas Supreme Court's holdings. *See Gallman v. Carnes*, 254 Ark. 987, 497 S.W.2d 47 (1973) (assistant law school dean is a public official); likewise, a deputy sheriff is, and so are city police officers. *See Hollowell v. Arkansas Democrat Newspaper*, 293 Ark. 329, 737 S.W.2d 646 (1987); *Lancaster v. Daily Banner-News Publishing Co., Inc*.,

274 Ark. 145, 622 S.W.2d 671 (1981).  Even a grade school wrestling coach has been held to be a public official.  *See Johnston v. Corinthian Television Corp.*, 583 P.2d 1011 (Okla. 1978).

### E.  Plaintiff Cannot Prove Negligence Against McNulty or PCSSD.

Plaintiff alleges common law negligence against Dr. McNulty, alleging he (a) failed to maintain competence regarding his practice; (b) failed to maintain knowledge and competence regarding the District's policies and applicable law; (c) failed to maintain knowledge or competence regarding applicable state laws; and (d) failed to maintain knowledge and competence regarding the application of District policies and applicable law.  *See* Complaint at ¶ 50.  Plaintiff claims the alleged negligence of Dr. McNulty is imputed to the District and was the proximate cause of her damages.

Plaintiff's claim is at bottom an employment discrimination claim, not negligence, and the Court must look to the substance of a pleading instead of its label.  *See, e.g., Farris v. Conger*, 2017 Ark. 83, at 8, 512 S.W.3d 631, 636 *Cornett v. Prather*, 293 Ark. 108, 737 S.W.2d 159 (1987); *Jack Wood Constr. Co., Inc. v. Ford*, 258 Ark. 47, 522 S.W.2d 408 (1975).   Defendant is not aware of a negligent discrimination cause of action under Arkansas law, but rather Arkansas has a statutory scheme in the Arkansas Civil Rights Act that is directly on point.  The Arkansas Supreme Court has held the appropriate analysis in such a case as this is the *McDonnell Douglas* burden-shifting framework, as analyzed above in Plaintiff's Title VII and ACRA claims.  *See Brodie v. City of Jonesboro*, 2012 Ark. 5 and *Alexander v. E. Tank Servs.,* 2016 Ark. App. 185, at 6, 486 S.W.3d 813, 816 (Ct. App.).  There is no dispute that Title VII and ACRA would cover Plaintiff's alleged claims and is the more applicable cause of action to apply to Plaintiff's claim.

However, assuming Plaintiff could present a negligence claim, she must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's damages.  *See Branscumb v. Freeman*, 360 Ark. 171,

200 S.W.3d 411 (2004). In order to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed the plaintiff under the circumstances surrounding them. *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349. Here, Plaintiff has presented no facts that would establish Dr. McNulty owed any legal duty to her.

Furthermore, Plaintiff must prove Dr. McNulty's alleged negligence was the proximate cause of her damages. Here, Plaintiff cannot as a matter of law prove that McNulty's alleged failure to maintain knowledge and competency as to District policies and laws was the direct cause of her damages. Indeed, Plaintiffs alleged damages, if at all, were the result of McNulty's decision to reassign her, which is a separate cause of action sounding in employment, not negligence.

Plaintiff's claims of negligence against Dr. McNulty, an employee of PCSSD, must be dismissed.

## CONCLUSION

Based upon the foregoing argument and authority, Defendants respectfully submit that their Motion for Summary Judgment should be granted and that Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By: __**W. Cody Kees**__
     Jay Bequette, Ark. Bar #87012
     W. Cody Kees, Ark. Bar #2012118

*Attorneys for Defendants*

19